Good morning, your honor. May it please the court. Okay, are we ready? Let me just pause a moment to again introduce case number 19-2059, Oliva v. United States. Mr. Park, proceed. Good morning, your honor. May it please the court. My name is Han Park, counsel for the appellant Stephen Oliva. This is a case about a whistleblower who did the right thing by raising a flag about a prohibited personnel practice at the VA but received retaliation. Mr. Park, this is Judge Wallace. On page one of the blue brief, you characterized this appeal as a contract and takings case. Have you raised any takings claims and if so where is that in the record? We have not raised it and we clarified it in our reply brief that we are only raising the contract claim. On page 91 of the joint appendix, Mr. Oliva's complaint notes that he's also pursuing a wrongful termination claim before the Merit Systems Protection Board. Is that still the case and is that the same as the whistleblower complaint noted in your blue brief? That's a different complaint. So the whistleblower complaint is about the retaliation by the VA by issuing the reprimand letter. The termination complaint is regarding the ultimate termination of Mr. Oliva in April 2016. And is he still pursuing that? We are not involved in that case but my understanding is that he is pursuing that claim. I believe that case is scheduled for argument in our court in the May session. That case that's the VA perceived Mr. Oliva as a whistleblower and then the reprimand letter was caused by the VA's perception that he is a whistleblower. However, the MSPB stated that the breach of agreement is more accurately the proximate cause of his non-selection rather than reprimand itself. So that forced Mr. Oliva to file this claim for contract. So all Mr. Oliva... Wait, we have a situation here in which the contract was admittedly breached on two occasions and the question is damages. So why don't you address that? Yes. So I'll address the first, the last salary claim. The court of rather than the VA's breach of settlement agreement in February 2016 was the proximate cause. But this finding misses Mr. Oliva's situation as a whistleblower at the time of the settlement agreement and the purpose of the agreement. It is undisputed... Mr. Park? Yes. This is Judge Wallach. On page 22 of the blue brief you say, I'm quoting you, because the termination was a and would not have occurred but for the VA's breach. It cannot be a proximate cause of the left lost salary. What's the legal basis for that foreseeability argument? You didn't cite anything. The foreseeability argument is that looking at the case of Allstone Corp and Fifth Third Bank, the proximate cause and foreseeability doctrines are not meaningfully distinct. So when an event is a foreseeable consequence of the breach of settlement agreement, the breach of the contract, then the courts have found that the proximate cause is actually the breach of the contract rather than the foreseeable event that happened because of the breach. It's very confusing. Look, he says you promised not to tell other people about the reprimand. You told other people about the reprimand. I didn't get a couple of jobs as a result of that. And the fact that I might have been terminated later by the VA doesn't mean I can't recover for the lost opportunities that resulted from the breach. That's basically your case, right? That is right. But Mr. Oliver needed the settlement agreement so that he could precisely avoid what happened in April 2016. That is to get another VA job before getting fired. He saw the writing on the wall when he was being retaliated by the VA for his withholding activity. So the parties for contract, if he'd gotten one of these other jobs, he wouldn't have been terminated. He would have taken the other job. He would have had the other job. He would have had the income from the other job. He would have had the relocation compensation from the other job. The fact that he didn't get the job and that he was fired later has nothing to do with his damages claim, right? We respectfully disagree because... You disagree that you're entitled to recover? No, we disagree that it has nothing to do with the breach. Maybe I misunderstood your... What I'm saying is they breached the contract. They deprived him of the opportunity to get other jobs. If he'd gotten those other jobs, he never would have been terminated from the job he had, right? That's correct. You know, all of these separate actions are not... You can't say that they're totally independent, one of the other. Was there any logic to having all of these separate actions? Is it because they're different tribunals? But to the extent that they're in different tribunals, does that mean that the issues, one and the other... The question of wrongful termination can't really be separated in a practical way, can it, from the question of damages because of lost opportunity? We think all these are part of the continuation of VA's retaliation, but every time you go to... Mr. Oliva goes to one tribunal, he's told that the cause is some other wrongdoing by the VA, and he goes to another tribunal, then just as the government argues here, they say, okay, you have to go to another tribunal for a different claim. So all Mr. Oliva is asking is to be compensated for the harm that VA inflicted on him, but it looks like what he's being told is that while there was a harm, that harm that you have to seek damages for is something else, not the one you are seeking here. So it's just the result of the harm that he was dealt with, not that he's trying to get more damages than what he's entitled to. Okay, this really hadn't been clear to me. You're telling us that the reason that you have all these separate actions in the separate tribunals is the result of various offenses that were raised by the government and required to respond to them? Either the defense by the government or the ultimate finding by the tribunal. So MSPB found that even though there was a whistleblowing activity, then the damages are because of the contract breach. And also this Court of Federal Claims found that, okay, you might have lost your wage, but it's because of wrongful termination of the job. So it's both the government's defense and the finding of tribunal that's forcing Mr. Oliva to seek claims at different tribunals. Okay, and so you're operating within that framework and saying that the only issue here, then, is breach of contract. But doesn't one have to assume that all these other issues would be decided or have been favorably decided, or in this case, the breach of contract is conceded, so that the other issues are not? If he isn't a whistleblower, then, for instance, or if the MSPB finds no basis for his response to the employment action, then the issues here of damages also would lose their support, would they not? Just correct. So, for example, if he were to collect relocation incentive pay through the whistleblowing activity, then he wouldn't ask for the same damages here. Okay. Now, I hear the bell, and I think we're ready. I have some questions for the government. Does the panel have any more questions at the moment for Mr. Park? This is Judge Wallach. I don't at the moment. Okay, so you have your rebuttal time. We'll see what the government has to say. Mr. Pecky, are you there? Yes, good morning. May it please the court? Judge Newman, you said you had some questions. If you'd like to just start with that, that's fine with me. Well, one of the things which starts to rise significantly to the surface is all of the tribunals that this employee, ex-employee, has been required to go to along with the expense of counsel, and I don't know what else, plus the separation of the issues. And the response to the last question is that this has just sort of evolved with the proceedings of government responses and tribunals attempting to stay within their jurisdiction. And from the government's viewpoint, and let's take the larger issue, this starts to sound not fully in keeping, or perhaps not at all in keeping with the legislative purpose to provide a fair and reasonable approach to resolving employment disputes. Yes, Your Honor. So the proliferation of claims that Mr. Olivas brought, there's the MSPB claim, as this court's aware of, that is being argued next month, which is on appeal. Well, he's seeking the same damages that he's seeking here. He's arguing that the MSPB erred when it didn't give him the relocation incentive pay on the retaliation claim that he brought, or on the whistleblower claim that he brought. Well, no, you can't fault him for that. If he dropped it, the government would say he's not interested in damages. Well, no, no. I'm just trying to line up that there's – I think that any information from counsel that somehow the damages aren't available, and that's why he's pursuing multiple actions, is belied by the fact that he continues to seek those damages in multiple actions. That may be true, but what about this action? I mean, this seems pretty simple. The government breached the contract. He alleges, and he may be able to prove it or he may not be able to prove it, that he didn't get a couple of jobs because of the breach by the government. And he says that he wants the salary and relocation expenses that he would have gotten if he'd gotten those jobs. And he says it's irrelevant that later on, after he would have gotten those jobs, that he was terminated. What's the matter with that theory? The problem with the theory, as it comes through in Judge Grigsby's opinion, is I think you can narrow it down to the missing dates, the missing time frame – it doesn't even have to be specific dates – surrounding the applications, his rating, and the termination. I'm not following what you're saying. Let's deal with a simple hypothetical. The government breaches the contract, he fails to get a job that he would otherwise get, and he's asking for damages, and he says the fact that later I was terminated has nothing to do with it. What's the matter with that theory? Two things in this case. First, the specific damages identified for one front, which are relocation damages, require a specific rating at the time the job is taken, and there are no allegations in the complaint to support that, and in fact the allegations tend to contradict it. The second thing wrong with it is the termination, which happened close in time to these application processes. There's nothing in the complaint to separate whatever behavior may have happened to lead to the termination or how the termination came about from these applications, which, when all of that is put into a complaint, it becomes… He says, in January, I applied for these jobs. I didn't get it because you breached the contract. In December, the government fired me. What does the fact that the government fired him a year later have to do with his right to damages for the breach earlier? Well, the government didn't fire him a year later. It fired him months later. I'm giving a hypothetical. Suppose he says, I didn't get a job in January because you breached the contract, and the government says, oh, well, you're not entitled to damages because we fired you a year later. What does that have to do with it? As Judge Grigsby found, and I think based on the way this complaint is alleged, that firing operates as an intervening cause, and there's nothing in the complaint to separate it out. What's intervening? It happened later after he didn't get the job. It's not intervening. It's just an event that happened after the breach and after he lost the job because of the breach. But that intervening – I'll leave aside the phrase intervening – that termination, which he's pursuing in this whistleblower action as wrongful based on some conduct, alleging that in the complaint raises in the complaint the conclusion that the termination may not have been – or the reason he didn't get these jobs wasn't because of anything the government did in regards to these settlement agreements, but was because of behavior. Wait, wait, wait. This is Judge Wallach. I have a couple of questions. One, as to the failure to get the jobs, it's undisputed that the government breached and said bad things about Mr. Oliva to the potential employers, right? No, it is not. I mean, we are on the pleadings here. The facts will show that – No, no. On the pleadings, all he says, he alleges that they mentioned the retaliation in the first instance – In breach of contract. In breach of contract, and in the second instance that the wrong person responded, I think, is the allegation there. Okay. I said I had a couple of questions. The other one is, separately from his claim of damages for not getting the job, the relocation one looks to me like you have an interesting argument. On page 16 of the red brief, you argue that his claim that he was a federal employee with a fully successful rating when he applied for the Greenville position is insufficient because the reg actually requires that, quote, federal employees with a fully successful rating immediately before relocation. Correct, Your Honor. My question is, when might an employee be entitled to damages equal to relocation incentive pay? What would he have to allege? I think it would be very simple. And I also think it's telling here that there's never been a request to amend. Because I think that all it requires is, much like providing plausible allegations to support the elements of a claim, if you're claiming specific damages that are defined by a statute, where there are specific eligibility requirements, then I think it was entirely proper for Judge Grigsby to say, look, just put down the basic allegations that make it plausible that you're going to hit these eligibility requirements. If you have to do something on information and belief, do something on information and belief, but you've got to get some allegations down. And when you look at that complaint, it is very artfully pleaded. The two paragraphs that are identical for these two positions open with the allegation that Mr. Oliva met all the requirements at the time of application and interview. Then the last sentence of each of those paragraphs says that at the time of application, he had a fully successful rating. We don't know when he applied. We don't know when his rating changed. He was fired in close order on these things. None of that is in the complaint. And Judge Grigsby said, look, without that in there, it's not plausible to conclude that you have access to these damages or these wages or incentive pay as damages that are dependent on specific eligibility requirements. You've got to provide them. Did the government raise an affirmative defense that he was not fully successful at the time? Well, there was no relocation. Right. And we didn't answer because we moved to dismiss. So if we answer, we will obviously do this. And I don't know what's happening. Did he allege that he had a fully successful rating at all relevant times? No. He alleges he had a fully successful rating at the time of application. And he stuck with that. And this decision came down. This was dismissed once before when he was pro se, but surely it was secured pro bono counsel. These aspects of the complaint didn't change. And I mean, basically, the response to the motion of dismissal is we don't have to. And there's no request to amend that. Well, if the court thinks we do have to, we'll amend the complaint. So there's nothing in the complaint to solve the timing issues that the complaint itself raises. And I think that that's at the most basic level with underlying Judge Grigsby's decision. That only has to do with the relocation. Well, I think it's also inherent in I understand that the court is more reticent on the lost salary claim, which is different. I'm sorry. Go ahead. What is the missing allegation about the lost salary claim? Well, in the opinion, Judge Grigsby just talks about damages and also causation. And I think that the... Question. What is the missed allegation about the lost salary? That the alleged breaches caused the loss in salary. Well, they're not alleged breaches. They're admitted breaches. Well, we have not admitted anything in this action yet. I don't know. The briefing before us states that the breach of contract was a breach of that understanding was admitted. Yes. In the 2015 case, the agency, through the administrative process, the breach was found and then it was settled. And then he elected to validate the settlement after there were some administrative issues. So yes, there's been a finding at the administrative level that there was a breach of... You're saying the government can now take the position that there is no breach? Well, I'm saying that the government hasn't taken a position yet in this case, but there is a finding... Well, in that case... The government accepts that there's a finding at the administrative level that there was... Undisputed. A breach, yes. Undisputed that there were two breaches. No, Your Honor, one. There is no administrative finding on the second breach. Okay. All right. That may or may not turn out to be validated, but let's say we have one breach, one admitted breach. Isn't the question then entirely compensation for that breach? Well, under the elements of a breach of contract, he has to... So if you assume the first three elements then from a breach, it still has to show damages caused by the breach. It's also alleged that. And he seeks to allege that in the complaint, but it fails to cross the plausibility threshold. Well, what's not plausible? That there were damages or that... You can't say it's not plausible that there was a breach. That's behind this. The relocation pay is implausible because there is nothing in the complaint to support a... ...to those damages. What besides the relocation pay? That's a lost salary. A lost income. Well, the lost income, the breaches he alleges, which is that you gave the wrong... The wrong person gave a... He alleges... The reference... Hang on, hang on, Ken. He alleges at least, and there's a concession, that a potential employer was given derogatory information that the government promised would not be given. Isn't that not correct? In his allegations? Yes, that's what he alleges. Yes. Admitted? I mean, Your Honor, frankly, there is testimony and there are things in... It's in the MSPB case, and we're operating within the confines of a complaint here. And the exact status of what was done in the breach... Yes, something was mentioned, but the way it was mentioned is very specific. It wasn't in a negative way. It gets very factual, and I don't want to go into that here. But yes, the wrong thing was said when an employer called in terms of what's defined in the settlement agreement. So you've reached the... Please continue. Please respond to the question. I'm sorry, there was a... Contract, right? That's the allegation. Correct, that's the allegation. And he lost salary because he lost a job because you've reached the contract. He still had a job when it was breached. He was being paid then, and... He's not seeking to recover double damages. He's saying, I would have gotten this new job, and I would have continued as a new job, and I would have been paid by the new job. And I want to recover the additional amounts I would have received. What's the matter with that? Judge Walker, I just want to interject. There's a doctrine called future expectations. I simply do not understand the government's position. This looks like contract law 101, and you're trying to come up with some convoluted argument as to why damages shouldn't be paid for a breach by the government. The expectation damages of the lost salary, the court found to be too speculative based on the allegations. Because the termination which occurred, you put everything together, again, as alleged in the complaint, is right on top of these allegations of not getting the other jobs. And it becomes impossible, based on the allegations of the complaint, to extract whether or not these jobs were not given because of what was done or because he was terminated right around the same time. For some reason, there's nothing in there in terms of timeline, in terms of when this happened, when he heard about the jobs. There's nothing to fill out the details to untangle all of these things that happened at the same time. It's unusual that these basic allegations aren't made, aren't offered in the complaint. But the result of it is this conflating. And that's what Judge Grigsby ultimately found there. That's the problem. Okay, we see the problem. Does the panel have any more questions for Mr. Pelkey? This is Judge Wallach. I have a couple of comments. Okay, proceed. One is that I think I was talking at the same time as Judge Dyke, so you may not have heard me. It seems to me that the doctrine at issue is, if nothing else, is future expectations. And the other is, as far as your discussion regarding what he alleged and didn't allege in the complaint, is that may be for the magic of discovery after an answer. But those are my comments. Thank you. Okay, anything else from the panel? Judge Dyke, any more questions? No. Judge Wallach? No, thank you. Okay, in that case, we'll hear rebuttal from Mr. Park. Yes, Your Honor. I just wanted to address two things. The first is about the damages at different tribunals that came up today. So I just wanted to remind Your Honor that we are at the motion of dismiss stage for this case. And the question of damages would develop over time with discovery and how the other cases proceed. So there is no risk that somehow we are seeking double damages for all these claims. And second, I wanted to address the relocation incentive pay issue. So Mr. Oliva, he pledged that his rating of record was at least fully successful or the equivalent at the time he submitted his application. And this provides reasonable inference that Mr. Oliva would have met the requirement to receive relocation incentive pay immediately before the relocation. And I think the government was implying somehow that Mr. Oliva was artfully trying to avoid answering some facts the way it was written here. But what's ironic here is that the VA knows better than anybody when it made a hiring decision for the Greenville Health Center and what Mr. Oliva's rating of record was at the time and whether he was a federal employee at the time. So this is not something that Mr. Oliva can somehow hide from the government because the government has all this information. So it just seems like the government is arguing that Mr. Oliva should have pledged that it would make his claims even more plausible than meeting the plausibility standard. But that's not the requirement here. What he pledged that he had a record of fully successful or equivalent at the time he submitted his application showed plausibly that he would have retained the same record when he would have been relocated after getting the job. Of course, when he would have relocated, Mr. Oliva doesn't know yet, but we expect that to come out through discovery because the government has that information. Okay. Anything else that you need to tell us? Does the panel have any more questions for Mr. Park? I hear silence. Judge Wallach, silence, yes. Okay. Well, in that case, we are ready to take the case under submission. We thank counsel. The case of Oliva against the United States is submitted. And that concludes this panel's telephonic arguments for this morning. The Honorable Court is adjourned until tomorrow morning at 10 a.m.